**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY NECK & BACK INSTITUTE, P.C.,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. |

# COMPLAINT

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff New Jersey Neck & Back Institute, P.C. ("Institute" or "Plaintiff") brings this action against Aetna Life Insurance Company ("Aetna" or "Defendant").

1. This is an action concerning Aetna's under-reimbursement of Institute for specialized spine surgery procedures.

2. Aetna was the insurer of the Capital Health System Employee Welfare Benefit Plan, an ERISA plan under which Institute's patient, MW, was a plan member.

3. Institute was an out-of-network provider, meaning that its surgeon, Sandro LaRocca, M.D., did not participate in Aetna's network. Aetna entered into a contractual agreement with Institute by which it granted Institute an in-network exception for the spine surgeries. Aetna promised that Institute's patient would be responsible only for in-network cost-sharing requirements.

4. After Dr. LaRocca performed the pre-authorized spine surgery under the contractual in-network exception, Aetna breached this agreement and refused to apply the in-

1

network exception. Instead, Aetna reimbursed Institute based on a percentage of the Medicare allowable rate, which it pays to out-of-network providers. Aetna's breach left Institute with a total of $423,191.96 in damages for the specialized back surgery.

## JURISDICTION

5. The Court has jurisdiction over Institute's direct claims under 28 U.S.C. § 1332(a) and (c) (diversity). The parties are diverse and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. With respect to 28 U.S.C. § 1332(c), Defendant Aetna's principal place of business is Hartford, Connecticut.

6. The Court has personal jurisdiction over the parties because Institute submits to the jurisdiction of this Court, and Aetna systematically and continuously conduct business in the State of New Jersey, and otherwise have minimum contacts with the State of New Jersey sufficient to establish personal jurisdiction over it.

7. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Aetna transacts business in the District of New Jersey; (b) Aetna conducts a substantial amount of business in the District of New Jersey, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the District of New Jersey; and (c) Institute transacts business in the District of New Jersey.

## PARTIES

8. Plaintiff New Jersey Neck & Back Institute, P.C., is a surgical practice led by Sandro LaRocca, M.D. The Institute's principal office is in Lawrenceville, New Jersey.

9. Defendant Aetna Life Insurance Company is a health care insurance company. Its principal office is in Hartford, Connecticut.

## **FACTUAL ALLEGATIONS**

10. On May 23, 2016, prior to the surgery that was performed on June 3, 2016, Aetna approved coverage for a series of spinal procedures and specifically approved the surgery billed with procedure codes 20936 (autograft for spine surgery), 22842 (posterior segmental instrumentation, 20930 (placement of osteopromotive material for spine surgery), 63042 (laminotomy), and 63047 (laminectomy). It stated for each procedure code: "This service is approved at an in-network benefit level. The member will be responsible only for in-network cost-sharing requirements."

11. This letter also stated that Aetna had verified that the Patient was eligible for coverage under the Plan, that the Plan provided coverage for the surgery, and that the surgery was medically necessary.

12. Aetna's letter pre-approving the procedures at an in-network benefit level is called an in-network exception.

13. When an insurer agrees to an in-network exception with an out-of-network provider, the insurer agrees that there is no provider in its network qualified to provide its member's requested service or procedure. The insurer must therefore turn to the member's out-of-network provider and offer the member the same benefits she would have had if there would have been an in-network provider available. This means the same in-network patient liability amounts. It also means that since in-network providers are prohibited from balance billing their patients, the insurer must reimburse the out-of-network provider who is offered an in-network exception the provider's billed amount or negotiate an agreed-upon rate so that the provider does not balance bill the patient – as out-of-network providers are permitted to do.

14. Aetna also specifically approved the surgery billed with procedure codes 22633 (arthrodesis), and 22851 (application of intervertebral biomechanical device), but at an out-of-

network benefits level.  However, all the approved procedures were proposed to be performed by one physician, Dr. LaRocca.  Since Aetna approved all but two of the separate codes for the same surgical procedure performed by the same surgeon at the in-network benefits level, it should have approved the other two codes at the in-network benefits level.

15. The patient, MW, presented with lumbar spondylolisthesis at L3-4 and lumbar spinal stenosis.  Spondylolisthesis means a fractured vertebra slips forward onto the vertebra below it. Spinal stenosis means abnormal narrowing of the spinal canal that results in pressure on the spinal cord or nerve roots.

16. The surgical procedures Dr. LaRocca performed were highly specialized. He performed a Posterior Lumbar Interbody Fusion ("PLIF"), which involved an incision in the center of the low back, moving the muscles aside to expose the lamina (the protective bony cover of the spinal cord), the removal of the lamina (a laminectomy), retraction of the nerve roots, removal of the affected vertebral disc material, insertion of a bone graft or cage containing bone graft to promote the fusion of the two vertebrae together, and insertion of screws and rods into the bone.

17. After performing the PLIF, Institute submitted an invoice on a CMS-1500 form to Aetna, as required, for $441,652.00.  The billed amounts, paid amounts, and CPT codes were as follows:

| CPT | Billed Amount | Paid Amount |
|---|---|---|
| 22633 | $176,265.00 | $7,375.64 |
| 63047-59 | $42,593.00 | $651.81 |
| 22842 | $82,166.00 | $1,191.44 |
| 22634 | $47,538.00 | $775.85 |
| 22851 | $45,648.00 | $636.75 |
| 22851 | $45,648.00 | $636.75 |

| | | |
|---|---|---|
| 20936 | $1,042.00 | $181.80 |
| 20930 | $752.00 | $0.00 |
| **Total** | **$441,652.00** | **$18,460.04** |

18. Institute was owed $423,191.96 for the patient's spinal surgery, or 96% of the total amount.

19. Aetna stated in its Explanation of Benefits ("EOB") that "Member's plan allows up to 200% of the Medicare Allowable Rate for charges covered by their plan."

20. This payment, and its methodology, breached the contract between the parties that Aetna would pay Institute based on the in-network exception agreement. The parties did not agree under this contract that Aetna would pay Institute based in any way on Medicare-levels of reimbursement, or in any way based on the terms of the Plan. The Medicare-based reimbursement methodology left Patient MW responsible for out-of-network patient liability amounts, including deductibles, co-pays, coinsurance, and balance billing.

21. This is a direct action sounding in contract and equity between Institute and Aetna concerning the in-network exception agreement. Because resolution of the issue of the breach does not involve interpretation of the terms of the patient's Plan, this action is not preempted by ERISA.

22. Because this action is not preempted by ERISA, Plaintiff was not required to exhaust administrative remedies.

## COUNT I

### BREACH OF CONTRACT

23. Aetna entered into an agreement with Institute under which it granted an in-network exception for the surgical procedures to be performed by Institute on its patient.

24. The parties entered into a valid contract. This contract was expressed in a letter dated May 23, 2016. The letter stated: "This service is approved at an in-network benefit level. The member will be responsible only for in-network cost-sharing requirements."

25. Aetna failed to perform its obligations under this contract because it did not pay Institute at an in-network benefit level, and Institute's patient was therefore responsible for out-of-network patient liability, including balance billing for the full unreimbursed amount.

26. As a result of Aetna's breach, Institute sustained damages in an amount $423,191.96.

## COUNT II

## PROMISSORY ESTOPPEL

27. Aetna is estopped from denying that it entered into an enforceable agreement with Institute, dated May 23, 2016, in which it granted an in-network exception for the surgical procedures to be performed by Institute on its patient.

28. In entering into this agreement, it was foreseeable that Institute would rely on the agreement to its detriment. When Aetna sent the in-network exception letter prior to the patient's surgery, stating that it approved the procedure at an in-network benefit level, Institute's surgeon proceeded to perform the surgery on the patient reasonably, substantially, and detrimentally relying on the in-network exception letter.

## COUNT III

## ACCOUNT STATED

29. The Aetna letter dated May 23, 2016, which granted an in-network exception for the surgical procedures to be performed by Institute on the patient gave rise to the liability.

30. This letter was an express or implied agreement between the parties that fixed the amount due.

31. This letter made an express or implied promise to pay the liability of debt for which Institute was owed.

32. The CMS-1500 forms and EOBs also fixed the amounts due Institute, which is $423,191.96.

**WHEREFORE**, Institute demands judgment in its favor against Aetna as follows:

(a) Awarding damages for breach of contract;

(b) Awarding damages for account stated;

(c) Ordering that Aetna is estopped from denying that it entered into an enforceable agreement;

(d) Awarding Institute the costs and disbursements of this action, including reasonable attorneys' fees and costs and expenses in amounts to be determined by the Court;

(e) Awarding prejudgment interest; and

(f) Granting such other and further relief as is just and proper.

Dated: February 13, 2020

/s/ Michael F. Fried
AXELROD LLP
354 North Fourth Avenue
Highland Park, NJ 08904
(732) 718-6171
mfried@axelrodllp.com

Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Leslie S. Howard
COHEN HOWARD LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
(732) 747-5202
lhoward@cohenhoward.com

Attorneys for Plaintiff New Jersey Neck & Back Institute, P.C.